IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SAMUEL CORRAL, individually
and for others similarly situated,

     Plaintiff,

v.                                                   Civ. No. 21-0390 KG/SMV

CONCHO RESOURCES, INC., and
CONOCOPHILLIPS COMPANY,

     Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

Named Plaintiff Samuel Corral filed this potential class action lawsuit under the Fair

Labor Standards Act (FLSA), 29 U.S.C. § 216(b), on April 27, 2021. (Doc. 1). Corral, joined by

Jeremy Garcia and Bill Teel on May 5, 2021 (Doc. 2); Mark Abila on May 12, 2021 (Doc. 4);

Rodney Cutler, Aaron Parriette, John Powell, Abelardo Salinas, Jr., and Frank Salinas on May

20, 2021 (Doc. 5); Enoc Martinez on May 21, 2021 (Doc. 6)[1]; Jerry Abrams, Leevi Hallmark,

and Benjamin Munoz on June 17, 2021 (Doc. 19); Cesar Elguezabal and Louis Ledit on June 22,

2021 (Doc. 20); Ben Hildreth on August 19, 2021 (Doc. 27); Russel Bergoon and Ronnie Hofer

on January 31, 2022 (Doc. 41); and Kenneth Richburg on June 20, 2022 (Doc. 55) (collectively,

"Opt-In Plaintiffs"), seeks to recover unpaid overtime wages working for an oil and gas

company, Concho Resources, Inc. (Concho).[2] In the instant motion, however, third parties seek

to intervene in the case and, eventually, compel Corral, Bergoon, Hofer, Munoz, Garcia,

---

[1] Robert Haggerton also filed consent at this time (Doc. 6), but subsequently withdrew that
consent on November 30, 2021 (Doc. 40).

[2] Concho refers collectively to Defendants Concho Resources, Inc. and ConocoPhillips
Company.

Parriette, Powel, and Frank Salinas (collectively, "RUSCO Plaintiffs") into arbitration. *See* (Doc. 44-7). The third parties are RUSCO Operating, LLC, and Ally Consulting, LLC (collectively, "RUSCO"), the companies that provided the online platform through which Concho hired the RUSCO Plaintiffs. Having reviewed the briefing and applicable law, and being otherwise fully advised, the Court finds that RUSCO may intervene both as of right as of the Court's discretion. Therefore, the Motion to Intervene (Doc. 44) is granted.

I.    *Factual and Procedural Background*

Corral, later joined by the Opt-In Plaintiffs as described above, filed this case on April 27, 2021, seeking to recover unpaid overtime wages while working for Concho, an exploratory oil and gas company. A key question in the case is whether Corral and the Opt-In Plaintiffs are appropriately classified as "independent contractors" or as "employees" of Concho. If they are classified as employees, the FLSA will attach and Concho may be required to pay overtime wages. On July 9, 2021, Concho filed a Notice of Intent stating it did not intend to file a motion to compel arbitration. (Doc. 23). Nonetheless, no discovery has been conducted and the Court has not yet resolved Corral's Motion for Conditional Certification (Doc. 30). That is, the case remains in its infancy.

Against this background, the Court confronts RUSCO's Motion to Intervene and examines how RUSCO fits into the case. RUSCO is, primarily, an intermediary or a matchmaker. It provides a forum through which potential wellsite consultants advertise their talents to oil-and-gas companies, and through which those companies hire workers for individual projects. RUSCO also provides administrative or back-end support functions, such as payment, insurance, and record-keeping. Put another way, when a worker performs work, RUSCO pays

the worker based on an invoice submitted by the worker, less a percentage compensating RUSCO for its services.  Such is the arrangement between the RUSCO Plaintiffs and Concho.

In their initial agreements with RUSCO, the RUSCO Plaintiffs agreed to two key stipulations before accessing RUSCO's platform.  First, they agreed to be classified as "independent professionals" or "independent contractors."  *See* (Doc. 44-2) at ¶¶ 1-2.  RUSCO contends this classification allows workers more control over their economic destiny, additional flexibility in choosing their work, and favorable tax treatment.  (Doc. 44) at 3.  The classification also permits oil and gas companies, or operators, to adjust their workforce based on varying demand, including seasonal fluctuations and the boom-and-bust cycles of oil and gas markets. RUSCO credibly asserts that its entire business revolves around this independent contractor classification.  *See, e.g.*, (Doc. 44) at 3.

Second, in accessing RUSCO's platform the RUSCO Plaintiffs agreed to the following broad arbitration provision:

> This agreement to arbitrate disputes includes all claims arising out of or relating to any aspect of these Terms, whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory, and regardless of whether a claim arises during or after the termination of these Terms.

(Doc. 44-6) at ¶ 24; *see also* (Docs. 44-2, 44-3) (incorporating Terms of Service).  The RUSCO Plaintiffs further agreed to this separate, broad arbitration provision:

> This agreement to arbitrate disputes includes all claims arising out of or relating to any aspect of the Project, the Project Details, or this Agreement, whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory, and regardless of whether a claim arises during or after the termination of this Agreement.

(Doc. 44-2).  Salinas signed a slightly different arbitration agreement, whereby he agreed to arbitrate "all disputes, claims, and other matters in question arising out of or relating to the Parties' working relationship . . . exclusively in accordance with the provisions of this

Agreement." (Doc. 44-5) at ¶ 2. Bergoon, Hofer, Munoz, Garcia, Parriette, and Powell explicitly agreed that the arbitration provision "shall extend to any entity you sue concerning a Work Dispute and allege is your employer, jointly or otherwise. Such entity is likewise an intended third party beneficiary of this Dispute Resolution Section." (Doc. 44-2) at ¶ 14.

RUSCO now seeks to intervene in the case to enforce these arbitration agreements and defend its "independent contractor" classification. In response, the RUSCO Plaintiffs argue that the case centers on Concho's—not RUSCO's—obligations and liability, and Concho has expressly waived arbitration. Thus, Plaintiffs argue, the Court should not allow RUSCO to intervene. As in *Martin v. Tap Rock Resources, LLC*, Case No. 2:20-cv-170-WJ-CEG, 2022 WL 278874 (D.N.M. Jan. 31, 2022), Plaintiffs failed to acknowledge "a growing track record of District Courts around the country . . . rejecting most of Plaintiffs' arguments alleged herein."[3] *Martin*, 2022 WL 278874, at *2. Chief Judge Johnson noted this in January of this year, stating "[e]ach of these Courts have scrutinized the same arguments from the same attorneys now representing Plaintiffs facing virtually the same facts. Time and time again, each of these Courts

---

[3] The *Martin* Court helpfully collected other cases reaching the same result: *Bock v. Salt Creek Midstream LLC*, 2020 WL 3989646, at *7 (D.N.M. July 15, 2020) ("there is a growing body of intervention jurisprudence among district courts in similar cases, with the trend decidedly in favor of granting intervention") (same Plaintiff's counsel as instant action), *adopted by* 2020 WL 5640669 (D.N.M. Sept. 22, 2020); *Becker v. Delek US Energy, Inc.*, 2020 WL 4604544 (M.D. Tenn. Aug. 11, 2020); *Altenhofen v. S. Star Cent. Gas Pipeline, Inc.*, No. 4:20CV-00030-JHM, 2020 WL 3547947, at *1 (W.D. Ky. June 30, 2020) (granting intervention to staffing agency that employed plaintiffs pursuant to arbitration agreements, but which was not named in FLSA class action) (including same Plaintiffs' counsel as instant action); *Ferrell v. SemGroup Corp.*, 485 F. Supp. 3d 1334 (N.D. Okla. 2020) (same) (same counsel), *overruled on other grounds at* 2021 WL 5576677 (10th Cir. Nov. 30, 2021); *Robertson v. Enbridge (U.S.) Inc.*, 2020 WL 2104911, at *1 (W.D. Pa. May 1, 2020) (same) (same counsel); *Snow v. Silver Creek Midstream Holdings, LLC*, 467 F. Supp. 3d 1168 (D. Wyo. 2020) (same) (same counsel).

4

summarily denied Plaintiffs' attempts to prevent third-party intermediaries from intervening in their FLSA lawsuits." *Id.*

II.   *Analysis*

Federal Rule of Civil Procedure 24 governs intervention, providing two possible avenues for intervention.  Rule 24(a) speaks to intervention as of right, whereas Rule 24(b) governs permissive intervention.  The Court addresses both avenues.

A.  *Intervention as of Right*

To intervene as of right, the nonparty seeking intervention must establish (1) timeliness, (2) an interest relating to the property or transaction that is the subject of the action, (3) the potential impairment of that interest, and (4) inadequate representation by existing parties.  *Kane Cnty., Utah v. United States*, 928 F.3d 877, 889 (10th Cir. 2019) (citing *W. Energy All. v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017)).  The Tenth Circuit adopted a "liberal approach to intervention and thus favors the granting of motions to intervene."  *Zinke*, 877 F.3d at 1164 (citing *Coal. of Ariz./N.M. Cities for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 841 (10th Cir. 1996)).  All four factors weigh in favor of granting RUSCO's Motion.

i.   *Timeliness*

"The timeliness of a motion to intervene is assessed 'in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances.'" *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001) (quoting *Sanguine, Ltd. v. U.S. Dep't of Interior*, 736 F.2d 1416, 1418 (10th Cir. 1984)).  "When the applicant appears to have been aware of the litigation but has delayed unduly seeking to intervene, courts generally have been reluctant to allow intervention." 7C Charles A. Wright, Arthur R. Miller & Mary Kay

Kane, Federal Prac. & Proc. § 1916, at 539-40 (3d ed. 2007). This Circuit requires "the prejudice to other parties . . . be [that] caused by the movant's delay, not by the mere fact of intervention." *Oklahoma ex rel. Edmondson v. Tyson Foods*, 619 F.3d 1223, 1236 (10th Cir. 2010).

Plaintiffs contend RUSCO did nothing for approximately fourteen months before seeking to intervene in this matter, thereby prejudicing Plaintiffs. This calculation rests on when *Corral* filed the lawsuit and when the Opt-In Plaintiffs filed their Notices of Consent. *See* (Doc. 53) at 7. That is, Plaintiffs assume RUSCO must have known about the case when Corral filed it. Somewhat confusingly, Plaintiffs cite *Field v. Anadarko Petroleum Corp.*, 35 F.4th 1013 (5th Cir. 2022), for the proposition that RUSCO's interests in the case "materialized when individuals with whom [RUSCO] had actually contracted became a party to the lawsuit," which was when Corral filed the lawsuit in April 2021. (Doc. 53) at 7 (quoting *Field*, 35 F.4th at 1018) (emphasis removed). While Plaintiffs correctly quote *Field*, their argument misses the point: the question asked by the Fifth Circuit in *Field*, and by this Circuit in *Clinton*, is when the would-be intervenor learned of its interest in the case—not when that interest first arose. *Field*, 35 F.4th at 1018 ("The question is not when [an intervenor] knew or should have known that [its] interests would be adversely affected but, instead, when [it] knew that it had an interest in the case." (quoting *St. Bernard Par. v. Lafarge N. Am., Inc.*, 914 F.3d 969, 974 (5th Cir. 2019) (quoting *Sommers v. Bank of Am., N.A.*, 835 F.3d 509, 513 (5th Cir. 2016)))) (internal quotations omitted); *Clinton*, 255 F.3d at 1250 ("[t]he timeliness of a motion to intervene is assessed in light of all the circumstances, including the length of time since the applicant knew of his interest in the case" (internal quotation omitted)).

RUSCO represents to the Court that it "first became aware of this case in mid-November 2021 and applied to intervene in mid-May 2021[.]" (Doc. 56) at 5. Moreover, in its Certificate of Conference, counsel for RUSCO represents that she "conferred multiple times by email with Plaintiffs' counsel" regarding RUSCO's request to intervene from "April 5, 2022 to May 18, 2022." (Doc. 44) at 12. Therefore, the Court finds that RUSCO likely knew of the instant lawsuit about six months before filing this motion, and about five months before conferring with Plaintiffs' counsel about intervention. This delay is reasonable under similar case law. *See Martin*, 2022 WL 278874, at *4; *Fed. Trade Comm'n v. Nudge, LLC*, 2020 WL 6881846, at *4 (D. Utah Nov. 23, 2020) (holding intervention motion filed within five months of learning interest was timely); *Ass'n of Prof'l Flight Attendants v. Gibbs*, 804 F.2d 318, 321 (5th Cir. 1986) (same).

As to prejudice, Plaintiffs argue they will have to "re-litigate the same issues in a more restrictive setting even though they (and Concho) have actively participated in litigating this matter over a year and Concho waived the right to arbitrate against them." (Doc. 53) at 8. This argument contains an implicit misstatement: while it is true Plaintiffs and Concho have fully briefed the Motion for Conditional Certification (Doc. 33), the Court has not yet ruled on that motion. Moreover, *no* discovery has been conducted. To argue that the parties have "actively participated in litigating" suggests events that have not yet occurred. As to Concho's waiver of arbitration, Plaintiffs' argument erroneously assumes that the waiver binds RUSCO. It does not. These arguments to prejudice are unavailing.

Even assuming RUSCO knew for fourteen months, Plaintiffs have not suffered significant prejudice. *See Tyson Foods*, 619 F.3d at 1235 ("[D]elay in itself does not make a request for intervention untimely."). The Court has yet to rule on the conditional certification

issue and no other discovery has been conducted.  Furthermore, the Opt-In Plaintiffs have been

trickling into the case, meaning they cannot claim to have participated in what minimal litigation

occurred thus far.  Therefore, the Court finds the Motion is timely.

   ii.  *Interest Relating to the Transaction that is the Subject of the Action*

  "Whether an applicant has an interest sufficient to warrant intervention as a matter of

right is a highly fact-specific determination, and the interest test is primarily a practical guide to

disposing of lawsuits by involving as many apparently concerned persons as is compatible with

efficiency and due process."  *Barnes v. Sec. Life of Denver Ins. Co.*, 945 F.3d 1112, 1121 (10th

Cir. 2019) (quoting *Kane Cnty.*, 928 F.3d at 889).  The claimed interest must be "direct,

substantial, and legally protectable."  *Id.*

  Just as it has asserted in other cases, RUSCO asserts here two primary interests: first,

enforcing its arbitration agreements and class action waivers and second, defending its

"independent contractor" classification to protect its business model.  (Doc. 44) at 7.  This Court

finds that each of these are valid, protectable interests that may be adversely impacted by this

case.  *E.g.*, *Martin*, 2022 WL 278874, at *4-8; *see also Field*, 35 F.4th at 1019-20 (finding

interest in enforcing arbitration agreements protectable, and remanding for further proceedings).

   a. *RUSCO has a valid interest in enforcing its arbitration agreement.*

  With respect to the arbitration agreements, the RUSCO Plaintiffs agreed to seemingly

broad arbitration provisions before accessing RUSCO's services.[4]  Plaintiffs offer several

---

[4] That provision reads:
> This agreement to arbitrate disputes includes all claims arising out of or relating to
> any aspect of these Terms, whether based in contract, tort, statute, fraud,
> misrepresentation, or any other legal theory, and regardless of whether a claim
> arises during or after the termination of these Terms.

(Doc. 44-6) at ¶ 24; *see also* (Docs. 44-2, 44-3) (incorporating Terms of Service).

reasons why the arbitration agreements may be unenforceable, including their continued but

unsupported assertion that Concho waived RUSCO's right to compel arbitration.  Determining

the enforceability of arbitration agreements is more appropriate for a subsequent motion to

compel arbitration or for the arbitrator, depending on the provision at issue.  Nevertheless, at this

stage, the Court focuses on whether RUSCO has asserted a sufficient interest to be afforded the

opportunity to intervene, not on whether RUSCO's forthcoming merits-based arguments will be

successful.

In July 2020, Magistrate Judge Fouratt confronted substantially similar arguments under

substantially similar facts, presented by the same attorneys for Plaintiffs, in *Bock v. Salt Creek*

*Midstream LLC*, Civ. No. 19-1163 WJ/GJF, 2020 WL 3989646 (D.N.M. 2020).  In that case,

Judge Fouratt found that:

> seeking to vindicate its [arbitration agreement] with Plaintiffs is a legitimate interest
> for [RUSCO] to protect.  As a signatory to that [arbitration agreement]—indeed as
> its sole drafter—[RUSCO] has an interest in pursuing what it views as the benefit
> of its bargain.  Denying [RUSCO] the ability to intervene and—at the very least—
> make the argument that its [arbitration agreement] be honored by its former
> employees is a result that Rule 24(a) is designed to protect.

*Bock*, 2020 WL 3989646, at *4, *adopted by* 2020 WL 5640669 (D.N.M. Sept. 22, 2020); *see also*

*Becker v. Delek U.S. Energy, Inc.*, 2020 WL 4604544 (M.D. Tenn. 2020) (finding same interest in

enforcing similar arbitration agreements); *Altenhofen v. S. Star Cent. Gas Pipeline, Inc.*, No.

4:20CV-00030-JHM, 2020 WL 35479741, at *1 (W.D. Ky. 2020) (same); *Ferrell v. SemGroup*

*Corp.*, 485 F. Supp. 3d 1334 (N.D. Okla. 2020) (same), *overruled on other grounds at* 2021 WL

5576677 (10th Cir. Nov. 30, 2021); *Robertson v. Enbridge (U.S.) Inc.*, 2020 WL 2104911, at *1

(W.D. Pa. 2020) (same); *Snow v. Silver Creek Midstream Holdings, LLC*, 467 F. Supp. 3d 1168

(D. Wyo. 2020) (same).  Notably, despite the fact that the vast majority of these cases involve the

same Plaintiffs' attorneys making the same arguments that they present in this case, Plaintiffs fail to address any of these cases or the overwhelming weight of authority contrary to their position.

In short, both of the arbitration agreements the RUSCO Plaintiffs signed are sufficiently broad that RUSCO should be afforded the opportunity to argue it can enforce these agreements against the RUSCO Plaintiffs. This true even though Concho waived its own right to seek arbitration. *See Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1489 (10th Cir. 1994) (focusing arbitration waiver inquiry on the party's own actions); *see also Peterson v. Shearson/American Express*, 849 F.2d 464, 467-68 (10th Cir. 1988) (same); *Reid Burton Constr. Inc. v. Carpenters Dist. Council of S. Colo.*, 614 F.2d 698, 702 (10th Cir.), *cert denied*, 449 U.S. 824 (1980) (same). Therefore, the Court finds that RUSCO has an interest in enforcing these agreements. *See Am. Ass'n of People with Disabilities v. Herrera*, 257 F.R.D. 236, 246 (D.N.M. 2008) ("The threshold for finding the requisite legally protectable interest is not high.").

> b. *RUSCO has standing to intervene.*

Plaintiffs challenge RUSCO's standing to intervene on the basis that Plaintiffs sued Concho, not RUSCO. Plaintiffs presented this same argument to Chief Judge Johnson in *Martin* and were unsuccessful. Plaintiffs attempt to distinguish *Martin* on the basis that RUSCO's customer in that case also wished to compel arbitration. (Doc. 53) at 10. However, the *Martin* decision does not contemplate whether the customer sought to compel arbitration but instead considered the customer's position irrelevant with respect to whether RUSCO could seek to compel arbitration. 2022 WL 278874, at *6-7. In fact, Plaintiffs in *Martin* contended that the customer "waived its right to compel arbitration by 'fiercely' litigating Plaintiffs over the past two years, and this waiver applies with equal force to RUSCO, meaning that RUSCO cannot compel arbitration in the instant litigation." *Id.* at 6.

10

The Court is troubled by Plaintiffs blasé approach to citations and on-point authority from this District, particularly when the same lawyers presented the same argument on substantially the same facts. Nonetheless, the standards for ascertaining RUSCO's "interest" in this case as well as its Article III standing are substantially the same. The interest claimed must be "direct, substantial, and legally protectable," *Barnes*, 945 F.3d at 1121, and standing requires a party to allege a concrete or particularized injury that is actual or imminent, *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). The Court finds that RUSCO's interest in enforcing its arbitration agreements, as well as its interest in defending its "independent contractor" classification and business model, satisfies both standards.

RUSCO's legal right here does not depend on Concho's waiver because that waiver does not immediately apply to a related third party that recently discovered it's interest in the lawsuit. In arguing to the contrary, Plaintiffs cite *In re Cox Enterprise, Inc.*, 790 F.3d 1112, 1116 (10th Cir. 2015. In that case, the defendant—not an intervenor—acted in a way that was inconsistent with seeking to compel arbitration. Here, however, RUSCO is a third-party that learned of this lawsuit only six months before filing its Motion to Intervene and has not itself acted in a way inconsistent with its right to compel arbitration.

Therefore, the Court finds that RUSCO has standing to intervene.

      c. *RUSCO has a valid interest in defending its classification and business model.*

The arbitration agreements notwithstanding, RUSCO asserts a separate and distinct interest in defending its classification of the RUSCO Plaintiffs as "independent contractors"—a critical piece of its business model. The Plaintiffs argue that they sued Concho, and only Concho, so only Concho's liability is at stake. They further assert the Court may only look to the economic realities of the work relationship between Plaintiffs and Concho, and RUSCO's external agreements with

the RUSCO Plaintiffs are irrelevant. Finally, Plaintiffs contend an adverse decision against Concho will have no impact on RUSCO. The Court disagrees.

These arguments by these Plaintiffs' lawyers made against the same potential intervenors have been rejected in similar suits across the country. No matter how Plaintiffs characterize the situation or attempt to artfully plead around their relationship with RUSCO, they cannot credibly argue that an adverse decision against Concho would not adversely impact RUSCO's business model. As Judge Fouratt found in *Bock*, and as Chief Judge Johnson reiterated in *Martin*:

> Whether Plaintiffs agree or not, this lawsuit is every bit the full-scale assault on [RUSCO's] business model as it is on Defendant's. If at the conclusion of this litigation Defendant is found liable, [RUSCO] will face … the pressure associated with knowing that *its* pay practice and *its* personnel structure were found to have violated federal and/or New Mexico wage-and-hour laws. With threats like that to [RUSCO's] financial security and its business operations model, denying [RUSCO] a podium in this debate is a result once again that Rule 24(a) is designed to prevent.

*Bock*, 2020 WL 3989646, at *4; *Martin*, 2022 WL 278874, at *7 (quoting same). The arrangement, or transaction, between RUSCO Plaintiffs and Concho was only made possible by RUSCO's online platform and business model. A determination that Concho misclassified the RUSCO Plaintiffs as "independent contractors" when they should have been classified as "employees" would upend RUSCO's business model and, likely, impair its financial security. From RUSCO's standpoint, it has asserted a financial interest worth protecting.

As they did in *Martin*, "Plaintiffs recycle past arguments by citing to *Statewide Masonry v. Anderson* for the proposition that 'a mere economic interest is not enough' to permit intervention." 2022 WL 278874, at *7 (quoting *Anderson*, 511 Fed. Appx. 801, 804-05 (10th Cir. 2013)). Plaintiffs again overlook the fact that the Tenth Circuit, in the same case and in the same paragraph, proceeded to state: "Indeed, this circuit recognizes that an economic interest *can* support intervention." *Anderson*, 511 Fed. Appx. at 805 (emphasis in original) (citing *United*

*States v. Albert Inv. Co.*, 585 F.3d 1386, 1396 (10th Cir. 2009)). Moreover, the "mere financial interest" addressed by the *Anderson* Court expressly dealt with ensuring intervention was not available simply to "anyone to whom any of the parties owed money." *Id.* Unlike the interest discussed in *Anderson*, RUSCO's economic interest stems directly from the subject matter of the lawsuit and does not implicate an unrelated financial arrangement. This argument fails again.

Put another way, RUSCO has a valid interest in defending its "independent contractor" classification to protect its business model, without regard to whether it has an interest in enforcing its arbitration agreements.

　　　iii.　　*Potential Impairment of RUSCO's Interests*

A nonparty seeking to intervene as of right must establish that the lawsuit could potentially impair its interests. "[T]he question of impairment is not separate from the question of existence of an interest." *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1116 (10th Cir. 2002) (quoting *Clinton*, 255 F.3d at 1253).

Plaintiffs assert that the Fifth Circuit's decision in *Field* "confirms there is no impairment to any interest RUSCO claims to have had." (Doc. 53) at 14. The Court confesses confusion with this citation, as Plaintiffs frame the operative question as whether *Concho* could invoke *RUSCO's* arbitration agreements, when the Fifth Circuit clearly found that the operator and the intervenor did not have the same "incentives to vindicate" the intervenor's contracts. *Field*, 35 F.4th at 1020. The *Field* Court went on to find:

> the respective motivations of [the operator] and the Intervenor[] are not so compatible to ensure that the Intervenors' contracts are not 'impaired or impeded' during the course of the litigation. *La Union del Pueblo Entero[ v. Abbott*, 29 F.4th 299,] 307 [(5th Cir. 2022)]. This is particularly so given that the plaintiffs seemingly are essentially *flaunting* the terms of the contracts they entered with the Intervenors, including their agreement to arbitrate, by opting-in to this action and alleging that they were really [operator's] employees all along.

*Id.* (emphasis in original).  Contrary to Plaintiffs' assertions, the Fifth Circuit in *Field* agreed that the operator and intermediary did not share the same interest in seeking arbitration, and the intermediary's interest would be impaired by the operator's decision—implicit or explicit—not to seek arbitration.

As for their remaining arguments, Plaintiffs restate the same arguments as above, and the Court rejects the same as described above.  The Court reaffirms its previous findings.

> iv.   *Inadequate Representation by Existing Parties*

Lastly, RUSCO must establish that Concho cannot adequately represent its interest in this case.  "This burden is 'minimal,' and 'it is enough to show that the representation 'may be' inadequate.'"  *Kane Cnty.*, 928 F.3d at 892 (quoting *Nat. Res. Def. Council v. U.S. Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978)).  "The possibility of divergence need not be great in order to satisfy th[is] burden.  An intervenor need only show the *possibility* of inadequate representation.  Only when the objective of the application for intervention is identical to that of one of the parties is representation considered by to be adequate."  *Barnes*, 945 F.3d at 1124 (emphasis in original) (quotation omitted).

Plaintiffs argue that RUSCO's interests are presumptively adequately represented by Concho, as their interests are fundamentally aligned in establishing the RUSCO Plaintiffs were independent contractors and not employees.  Plaintiffs argue that RUSCO, therefore, failed to demonstrate adversity with Concho.

The Court disagrees.  As discussed above, RUSCO's interest in arbitration is not adequately represented by Concho because Concho waived arbitration.  Second, Concho does not have the same motivation to defend RUSCO's business model as RUSCO does.  While RUSCO and Concho may share a broad goal, they do not share identical or mutually

symmetrical interests.  Thus, RUSCO's and Concho's interests in this litigation are sufficiently

divergent to satisfy the "minimal" burden that RUSCO's interests will not be adequately

represented by the existing parties.  *See Bock*, 2020 WL 3989646, at *4.

For all of these reasons, RUSCO adequately established its right to intervene under Rule

24(a).

B.  *Permissive Intervention*

A third party may also seek to intervene as of the Court's discretion, pursuant to Rule

24(b).  To satisfy this rule, the party seeking intervention must establish "a claim or defense that

shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  In

exercising its discretion, "the court must consider whether the intervention will unduly delay or

prejudice the adjudication of the original parties' rights."  *Tri-State Generation & Transmission*

*Ass'n, Inc. v. New Mexico Pub. Regulation Comm'n*, 787 F.3d 1068, 1074 (10th Cir. 2015)

(quoting Fed. R. Civ. P. 24(b)(3)).  In arguing against permissive intervention, Plaintiffs reargue

a number of their prior arguments.  First, they contend RUSCO has no "common claims or

defenses" in this case, and even if they held the right to arbitrate, Concho waived that right.

Concho's duties are entirely separate from RUSCO's, and looking to the RUSCO Plaintiffs'

agreement with RUSCO is unnecessary to determine Concho's liability.  Essentially, Plaintiffs

contend RUSCO is simply attempting to prejudice the RUSCO Plaintiffs by forcing them into

arbitration.  Again, the Court disagrees.

There are common questions of law; namely, enforcement of the RUSCO Plaintiffs'

arbitration agreements and their independent contractor classification.  *See DSMC, Inc. v.*

*Convera Corp.*, 273 F. Supp. 2d 14, 27 (D.D.C. 2002).  The case also entails common questions

of fact; namely, whether RUSCO Plaintiffs' pay and duties qualified them as overtime exempt

15

under the FLSA.  In fact, RUSCO concocted the very payment scheme that led to this case and was the entity that actually paid the RUSCO Plaintiffs for their work.  All such procedures— detailed in their agreements with RUSCO—are highly relevant to this matter.  Finally, the Court finds that RUSCO's intervention would not "unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).  The Court already has found that the Motion was timely and that Plaintiffs have not suffered significant prejudice.  Therefore, RUSCO is permitted to intervene as of the Court's discretion.

RUSCO's Motion to Compel Arbitration must be filed within three (3) calendar days from the date of entry of this Order.

C.  *Order to Show Cause*

Having prevailed on the merits, RUSCO also seeks its attorneys' fees in bringing this Motion because Plaintiffs opposed in bad faith.  (Doc. 44) at 10 and n.9.  RUSCO invokes the Court's inherent authority to assess attorneys' fees as fine for bad-faith litigation conduct.  *Id.* at n.9 (citing *Kreager v. Solomon & Flanagan*, 775 F.2d 1541, 1543 (11th Cir. 1985)).

As discussed above, the arguments and authorities cited by Plaintiffs' counsel have been rejected, time and again, including by courts in this District.  Plaintiffs' counsel did not meaningfully contend with that authority, and in fact, made material misrepresentations with respect to *Martin* and *Field*.  The Court is, therefore, concerned about candor to the tribunal and the legal contentions brought pursuant to Rule 11(b).  Indeed, the Court is considering granting RUSCO's request for attorneys' fees as a sanction for bad-faith litigation conduct under the Court's inherent authority, *Chambers v. NASCO*, 501 U.S. 32, 49-51 (1991), and as sanction for violations of Rule 11(b).

16

This Circuit requires notice and an opportunity to be heard before a court imposes sanctions. *United States v. Melot*, 768 F.3d 1082, 1083 (10th Cir. 2014). Therefore, Plaintiffs' counsel will show cause, in writing, how their conduct did not violate Rule 11(b) and was not in bad faith. Plaintiffs' counsel's response will be filed no later than seven (7) calendar days after the date of entry of this Order.

IT IS THEREFORE ORDERED that RUSCO's Motion to Intervene (Doc. 44) is granted and its Motion to Compel Arbitration must be filed within three (3) days. Furthermore, Plaintiffs' counsel shall show cause within seven (7) days as described above. Finally, the Caption shall be amended as follows:

[remainder of this page intentionally left blank]

SAMUEL CORRAL, on behalf of himself
and all others similarly situated,

    Plaintiff,

vs.                                                                Civ. No. 21-0390 KG/SMV

CONCHO RESOURCES, INC., and
CONOCOPHILLIPS COMPANY,

    Defendants,

and

RUSCO OPERATING, LLC, and
ALLY CONSULTING, LLC,

    Intervening Defendants.


_____
UNITED STATES DISTRICT JUDGE