IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SAMUEL CORRAL, individually
and for others similarly situated,

    Plaintiff,

v.                                                                 Civ. No. 21-0390 KG/SMV

CONCHO RESOURCES, INC., and
CONOCOPHILLIPS COMPANY,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiff Samuel Corral's (Corral) Motion for Conditional Certification (Motion), filed August 27, 2021. (Doc. 30). The motion is fully and timely briefed. (Docs. 33, 38). Having reviewed the complaint, the briefing, and attached documentation, and being otherwise fully advised on the applicable law, the Court grants the Motion as explained herein.

I.    *Factual and Procedural Background*

Corral, an unspecified type of oilfield worker who alleges he was improperly classified as an independent contractor, brings this lawsuit against Defendants Concho Resources, Inc. (Concho), and ConocoPhillips Company (CPC) as Concho's *bona fide* successor, to recover unpaid overtime wages as well as other damages provided under the federal Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and the New Mexico Minimum Wage Act (NMMWA), NMSA 1978, § 50-4-19 *et seq.* Corral alleges Concho was an oil and gas exploration and production company that operated in New Mexico and West Texas until it was acquired by CPC on January 15, 2021. Corral alleges that CPC, for its part, is a global oil and gas exploration and

production company, operating worldwide and throughout the United States, and is Concho's *bona fide* successor. As part of its business, Concho employed oilfield personnel. Corral contends he and other Concho drilling, completion, and production consultants "were typically scheduled for 12-hour shifts, 7 days a week, for weeks at a time." (Doc. 1) at ¶ 14. Corral alleges he and these other workers never received overtime compensation for the hours they worked in excess of 40 hours in a single workweek. *Id.* Moreover, Corral asserts that instead of paying overtime wages as otherwise required under the FLSA and NMMWA, Concho paid these workers a daily rate with no overtime, and that it improperly classified these workers as independent contractors. Corral and the proposed FLSA class[1] seek unpaid overtime wages and other damages. *Id.* at ¶ 3. Corral proposes the FLSA class be defined as "**Individuals who worked as Wellsite Consultants and Supervisors (including Drilling, Completion, and Production Consultants) for Concho during the past 3 years who were classified as independent contractors and paid a day-rate with no overtime.**" *Id.* at ¶ 17.

In the instant motion, Corral argues Concho misclassified its "wellsite consultants and supervisors (including drilling, completion, and production consultants)" as independent contractors in order to avoid paying them overtime wages. Corral, therefore, seeks to allow his

---

[1] The FLSA authorizes "representative" or "collective" actions akin to a Rule 23 class action. "Many courts and commentators . . . have used the vernacular of the Rule 23 class action for simplification and ease of understanding when discussing representative cases brought pursuant to § 16(b) of the FLSA." *Kelley v. Alamo*, 964 F.2d 747, 747 n.1 (8th Cir. 1992). Unlike class actions under Rule 23, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001) (quoting *Richardson v. Missouri Pac. R.R. Co.*, 186 F.3d 1273, 1276 (10th Cir. 1999)). For purposes of this Memorandum Opinion Order, the Court refers to the FLSA claim as a "class action."

co-workers to receive notice of this collective action and to stop the statute of limitations from running on their back-wage claims. *See generally* (Doc. 30).

Corral makes no specific allegations or assertions with respect to his main job duties or the main job duties of those he claims are similarly situated. Indeed, he alleges simply that "the Putative Class Members performed substantially similar job duties related to oil and gas operations in the field" and that he "performed routine manual and technical job duties[.]" (Doc. 1) at ¶¶ 64-65. In his Motion, Corral contends that his job and the Putative Class Members' jobs "involved similar job duties related to oil and gas operations in the field, including observing drilling operations on the rig and ensuring that the team is following safety protocol." (Doc. 30) at 12.

However, Corral attached Declarations from several opt-in Plaintiffs that provide slightly more detail. For example, opt-in Plaintiff Leevi Hallmark declared that his "main job for Concho, and the main job of Concho'[s] other Wellsite Consultants and Supervisors classified as independent contractors and paid a day rate, was to ensure the production of oil by supervising over the water transfer and permitting at the rig, observing operations, and ensuring that the team is following protocol." (Doc. 30-4) at ¶ 10. Opt-in Plaintiff Abelardo Salinas characterized his main job as ensuring "the production of oil by observing frac and stimulation operations on the rig and ensuring that the team is following protocol." (Doc. 30-5) at ¶ 10. Opt-in Plaintiff Frank Salinas described his main job as ensuring "the production of oil by preparing the well to produce oil as part of the completions group, ensuring the team follows safety and environmental protocols[.]" (Doc. 30-6) at ¶ 10. Opt-in Plaintiff Bill Teel averred that his main job "was to ensure the production of oil by monitoring well controls, observing operations on the rig, and ensuring safety protocol." (Doc. 30-7) at ¶ 10. Opt-in Plaintiff Enoc Ramirez declared his main

job "was to ensure the production of oil by observing drilling operations on the right and ensuring that the team is following safety protocol." (Doc. 30-8) at ¶ 10. Opt-in Plaintiff Benjamin Hildreth characterized his main job as ensuring "the production of oil by maintaining the wellbore and ordering and handling tools prior to going in and out of the wellbore and assisting with drilling." (Doc. 30-9) at ¶ 10.

Each opt-in Plaintiff averred that he was regularly required to work in excess of a 40-hour workweek. *See* (Doc. 30-4) at ¶¶ 22-23 (Hallmark worked 60-84 hours per week); (Doc. 30-5) at ¶¶ 22-23 (A. Salinas worked 90-105 hours per week); (Doc. 30-6) at ¶¶ 22-23 (F. Salinas worked 72-98 hours per week); (Doc. 30-7) at ¶¶ 22-23 (Teel worked 72-98 hours per week); (Doc. 30-8) at ¶¶ 22-23 (Ramirez worked 84-108 hours per week); (Doc. 30-9) at ¶¶ 22-23 (Hildreth worked 72-98 hours per week). Each declares he was a paid a day rate with no overtime. (Doc. 30) at 10.

Each opt-in Plaintiff included a statement in his Declaration that he made no significant monetary investment to do his work; Concho provided the oilfield equipment he worked on; he relied on Concho to provide him work; and he was paid solely based on the number of days he worked. (Doc. 30) at 11 (citing Declarations).

Corral asserts that all opt-in Plaintiffs are similarly situated because they all:

> (1) received a flat day rate for each day worked, regardless of the hours worked; (2) were all required or permitted to work overtime without receiving compensation at the legal rate of pay; (3) were all staffed to work for Concho; (4) were all employees of Concho that it mischaracterized as independent contractors; (5) were never guaranteed a salary; and (6) all performed work for Concho in the oilfield.

*Id.* at 13 (citing Declarations).

4

II.     *FLSA Section 216(b)*

FLSA Section 216(b) includes a provision allowing employees to maintain a collective action for overtime pay on their own behalf and on behalf of other similarly situated employees. This section provides that any employer violating the minimum wage or maximum hours section of this statute "shall be liable to the employee or employees affected in the amount of the unpaid minimum wages or their unpaid overtime compensation," and any additional damages. 29 U.S.C. § 216(b). Employees must opt-in to an FLSA collective action by giving consent in writing and filing the consent with the Court. *Id.*

The term "similarly situated" is not defined in the statute; however, the Tenth Circuit has adopted a two-tier *ad hoc* methodology to determine, on a case-by-case basis, whether members of a class are similarly situated. *See Thiessen v. General Elec. Capital Corp.*, 267 F.3d 1095, 1102-05 (10th Cir. 2001). In the first tier, or notice stage, courts require "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan" to show that the employees are similarly situated. *Id.* at 1102 (citation omitted); *see also Medrano v. Flower Foods*, 2017 WL 3052493, at *3 (D.N.M. 2017) (explaining that while similarly situated standard requires substantial allegations, the standard is "fairly loose initially, until discovery is completed"). The purpose of this first step is for the court to determine whether certification is appropriate for the purpose of sending notices and consent forms to potential plaintiffs. *Renfro v. Spartan Computer Servs., Inc.*, 243 F.R.D. 431, 432 (D. Kan. 2007) (citation omitted).

Once the court has conditionally certified a class, the parties engage in discovery. After the close of discovery, the court moves to the second step using a "stricter standard of 'similarly situated,'" which requires evaluation of different factors. *Thiessen*, 267 F.3d at 1102-03 (citation

5

omitted). These factors include: (1) the different factual and employment settings of individual plaintiffs; (2) the various defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. *Renfro*, 243 F.R.D. at 432.

III. *Analysis*

Corral seeks conditional certification of a proposed class of individuals who worked as "Wellsite Consultants and Supervisors (including Drilling, Completion, and Production Consultants) for Concho during the past 3 years who were classified as independent contractors and paid a day-rate with no overtime." (Doc. 1) at ¶ 17. Concho asserts that all opt-in Plaintiffs were actually employed by third-party vendors and that Wellsite Consultants, Completion Consultants, and Production Consultants perform materially different tasks at different stages of a project, meaning they are not similarly situated. *See generally* (Doc. 33) at 10-11, 16-18. Moreover, Concho contends Corral cannot show that he and the putative class members were subject to a single illegal pay decision, policy or plan. *Id.* at 13-16.

"The standard of certification at the present stage is a lenient one that typically results in . . . certification." *Greenstein v. Meredith Corp.*, 948 F. Supp. 2d 1266, 1267 (D. Kan. 2013) (citation omitted). Indeed, "[t]he court does not weigh the evidence, resolve factual disputes, or rule on the merits of plaintiffs' claims" at this stage. *Id.*

Here, Corral adequately alleges the proposed class all share a common primary duty of ensuring oil production, are classified as independent contractors pursuant to Concho policy, are paid according to the same flat day rate scheme, and are uniformly subject to Concho's regulation and control. (Doc. 30) at 13. These allegations are sufficient to meet the first-tier requirement for conditional class certification which requires "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy,

6

or plan." *Thiessen*, 267 F.3d at 1102; *see also Renfro*, 243 F.R.D. at 433-34 (finding allegations that defendants "engaged in a pattern or practice of not paying overtime is sufficient to allege that plaintiffs were together the victims of a single decision, policy, or plan"). Concho's arguments regarding the class members' titles/roles and third-party status apply more to a merits-based determination, which is not appropriate at this conditional certification stage. *See Olivas v. C & S Oilfield Servs., LLC*, 349 F. Supp. 3d 1092, 1111 (D.N.M. 2018) ("[T]hat proposed class members held different job titles does not mean that they are not similarly situated."); *Pivonka v. Bd. of Cnty. Comm'rs of Johnson Cnty.*, 2005 WL 1799208, at *4 (D. Kan. 2005) (holding variations in employees' specific job duties did not defeat conditional certification because they shared general duties, and injuries arose from employer's failure to pay overtime).

However, concurrently with this Memorandum Opinion and Order, the Court granted RUSCO Operating, LLC and Ally Consulting, LLC's Motion to Intervene (collectively, RUSCO). (Doc. XX). The Court also imposed a deadline for RUSCO to move to compel arbitration. Therefore, any person contracted with RUSCO is not included as a "putative class member" at this time.

Based on the foregoing, the Court concludes Corral has made substantial allegations that the putative class members, excluding those contracted with RUSCO, are similarly situated and will grant the Motion for Conditional Certification.

IV. *Proposed Notice*

Concho argues that the parties should be required to meet and confer on the notice and method of distribution. Nonetheless, Concho objects to Corral's proposed Notice on the basis that it requires Concho to produce a list of names and contact information within ten (10) days of the Order, even though Concho "did not employ the potential class members and, as a result,

7

does not maintain records with this sort of information for them." (Doc. 33) at 20. Concho argues Corral "should bear the burden of gathering this information from the third-party vendors." *Id.* Concho also challenges "the extensive amount of personal information" requested as "inappropriate" and implicating "potential privacy and identity theft concerns." *Id.* Third, Concho argues that mail, email, and text message notification is unnecessary, and simple first-class mail is sufficient. *Id.* at 24. Along this line, Concho argues that text message notification is only appropriate when "there is proof that the defendant regularly communicated with the potential class members by text message," which does not exist here. *Id.* Finally, Concho challenges Corral's proposed reminder notice to be issued after 30 days on the basis that Corral provided no justification for such notice. *Id.*

The Court disagrees. As an initial matter, time is of the essence in distributing the Notice, so the Court will not require further conference on the proposed Notice or method of distribution. Indeed, Concho does not challenge the content of Corral's proposed Notice at all. Therefore, the Court approves the Notice as submitted at ECF No. 30-1, except that the caption shall be amended to reflect the correct judge assignment, to wit: "Case No. 2:21-cv-00390-KG/SMV."

With respect to who should bear the burden of identifying potential class members, courts commonly order defendants to produce this information. *See, e.g., Valencia v. Armada Skilled Home Care of NM, LLC*, No. CV 18-1071 KG/JFR, 2020 WL 2768977, at *4 (D.N.M. May 28, 2020); *Pruess v. Presbyterian Health Plan, Inc.*, No. CV 19-629 KG/JFR, 2020 WL 6544243, at *8 (D.N.M. 2020). Which purported third-party vendors Concho used to provide wellsite consultants, and the contact information for those consultants, is uniquely within Concho's

8

control. Those individuals contracted with RUSCO are expressly excluded. Concho need not produce information related to individuals contracted with RUSCO at this time.

The Court is sensitive to divulging information of putative class members, but disagrees that dates of employment materially implicate privacy concerns. Concho will produce all available contact information, including mailing address, email address, phone number for text message communication, and dates of employment/work. *See, e.g.*, *Valencia*, 2020 WL 2768977, at *4 (authorizing text message notification).

Finally, the Court finds that a reminder notice is appropriate in this case and is routinely authorized in this district. *See, e.g.*, *Valencia*, 2020 WL 2768977, at *4 (authorizing reminder notice).

V. *Conclusion*

Based on the foregoing, the Court concludes Corral has made substantial allegations that the putative class members are similarly situated. Therefore, the Court grants Corral's Motion for Conditional Certification and permits Corral to provide the proposed Notice to potential class members.

IT IS, THEREFORE, ORDERED that

1. Plaintiff's Motion for Conditional Certification (Doc. 30) is GRANTED;

2. The following collective is conditionally certified:

**Individuals, other than those contracted with RUSCO, who worked as Wellsite Consultants and Supervisors (including Drilling, Completion, and Production Consultants) for Concho during the past 3 years who were classified as independent contractors and paid a day-rate with no overtime.**

3. 10 days from the date of entry of this Order, Defendants will provide Plaintiff's counsel in Excel (.xlsx) format the following information regarding all putative collective members:

    a. Full name;

    b. Last known address(es) with city, state, and zip code;

    c. Last known e-mail address(es) (non-company address if applicable);

    d. Last known telephone number(s);

    e. Beginning date(s) of employment/work; and

    f. Ending date(s) of employment/work (if applicable);

4. Within twenty (20) days from the date of entry of this Order, Plaintiff's counsel will send a copy of the Court-approved Notice and Consent Form to the putative collective members by first class U.S. mail and by e-mail and/or text message;[2]

5. Putative collective members will have sixty (60) days from the date of mailing of the Notice and Consent Forms to return their signed Consent Forms to Plaintiff's counsel for filing with the court;

6. Within twenty (20) days from the date of entry of this Order, Defendants are required to post the Notice and consent Forms on all jobsites that were previously Concho sites for sixty (60) days in an open and obvious location. Defendants may remove the notice after sixty (60) days;

7. Plaintiff's counsel may follow-up the mailed Notice and Consent Forms with contact by telephone of former employees or those putative collective members whose mailed or emailed contact information is not valid; and

8. Thirty days from the mailing of the Notice and Consent Forms to potential collective members, Plaintiff's counsel is authorized to mail by first class U.S. mail and e-mail

---

[2] Again, any person contracted with RUSCO is not included in this group and Plaintiff's counsel **SHALL NOT** provide notice to or otherwise contact such persons at this time.

and text message a second, identical copy of the Notice and Consent Form to the putative collective members reminding them of the deadline for the submission of the Consent Forms.

_____
UNITED STATES DISTRICT JUDGE